# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT CARPENTER** <br> 2287 S. George Street <br> York, PA 17403 <br><br> *Plaintiff,* <br><br> vs. <br><br> **YORK AREA UNITED FIRE AND RESCUE** <br> 50 Commons Drive <br> York, PA 17402 <br><br> *Defendant.* | NO. _____ <br><br> CIVIL ACTION <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through undersigned counsel, hereby files this Complaint against Defendant:

## INTRODUCTION

1. Plaintiff initiates this action to seek redress against Defendant for unlawful violations of the Americans with Disabilities Act ("ADA") and other applicable law.

## PARTIES

2. Plaintiff is an adult individual currently residing at the above-captioned address.

3. Defendant, York Area Fire and Rescue ("Defendant") is believed and therefore averred to be a fire company created by the Pennsylvania municipalities of Spring Garden Township and Springettsbury Township.

4. Upon information and belief, Defendant accepts funding from the federal government either on its own accord and/or through its parent municipalities.

5. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of her or her job duties.

6. Defendant is an "employer" within the meaning of the Americans with Disabilities Act of 1990 because it is engaged in an industry affecting interstate commerce and because they maintained or maintains fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

7. It is believed and therefore averred that Defendant is an "employer" within the meaning of the Family Medical and Leave Act ("FMLA") as it engages in commerce, or in any industry or activity affecting commerce, and has fifty

("50") or more employees for each working day in each of twenty ("20") or more weeks in the current or preceding calendar year.

8. Defendant also maintains sufficient employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

### JURISDICTION and VENUE

9. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

10. The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

11. The United States District Court for the Middle District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

12. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

13. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Middle District of Pennsylvania at the time of the illegal actions set forth herein).

## PROCEDURAL and ADMINISTRATIVE REMEDIES

14. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

15. Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under the ADA and the PHRA.

16. Plaintiff filed a timely written charge of discrimination with the Philadelphia office of the Equal Employment Opportunity Commission alleging discrimination on or about June 20, 2018 (No. 530-2018-04331).

17. Plaintiff's complaint was cross-filed with the Pennsylvania Human Relations Commission.

18. The instant action is timely because it is initiated within ninety ("90") days after the receipt of a Right to Sue letter from the EEOC mailed on or about August 9, 2018.

19. Plaintiff has exhausted federal administrative remedies as to the allegations of the instant Complaint.

20. Plaintiff will seek leave to amend the instant complaint to incorporate a claim under the Pennsylvania Human Relations Act after the expiration of that act's statutory one year waiting period at any time up to or even at trial consistent with Fed.R.Civ.P. 15.

## FACTUAL BACKGROUND

21. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

22. Plaintiff began working for Defendant as a firefighter in or around November 1997.

23. In September 2017, Plaintiff became unwell and scheduled an appointment with his doctor.

24. Plaintiff's brother contacted the battalion chief to inform him that Plaintiff would be taking sick leave on or about September 23, 2017. He also indicated that paperwork would be faxed to the Defendant by Plaintiff's doctor.

25. Plaintiff suffers from, amongst other things, a major depressive disorder.

26. Medical documentation was sent to the administrative director, Lisa Einsig, on or about September 21, 2017.

27. On or about September 22, 2017, Plaintiff received a phone message from the battalion chief asking for a return call. Plaintiff was unable to call due to his medical condition.

28. Plaintiff did not go to work the next day.

29. On or about September 24, 2017, Plaintiff received a call from the battalion chief demanding a call back as soon as possible. Plaintiff did not call.

30. On or about September 28, 2017, Plaintiff received a letter from Defendant via certified mail.

31. The letter referenced Plaintiff's sick leave use on September 23, 2017 and the Defendant scheduled a disciplinary hearing for October 3, 2017 at 8:30 AM.

32. Plaintiff could not attend because of his health condition.

33. Plaintiff was never notified that the hearing did in fact go forward nor was he informed of any of the results of the hearing. However, Plaintiff's pay was

unilaterally reduced by twenty-four hours, which was an adverse employment action as a matter of law.

34. On or about September 29, 2017, a letter from Plaintiff's doctor was transmitted to Defendant about his failure to appear at the disciplinary hearing due to medical reasons.

35. On or about October 3, 2017, Plaintiff requested FMLA paperwork from Defendant.

36. Approximately three days later, that paperwork was filled out and hand delivered to Lisa Einsig.

37. On or about October 13, 2017, Plaintiff received a certified letter from Defendant requesting a medical status update and was further advised that he was not eligible for FMLA, due to the fact that his "employer" had less than 50 employees.

38. This was demonstrably wrong since "public agencies" are covered employers under the plain language of the FMLA without regard to the employee numerosity requirement that applies to private employers. *See* 29 U.S.C. § 2611(4)(a)(iii). But, notwithstanding that provision, Defendant would still be an employer under the FMLA given that is essentially a creation of two separate municipalities that have, upon information and belief, more than fifty employees.

39. On or about October 30, 2017, Plaintiff got a phone call to his home from Chief Hoff to see what was going on.

40. Hoff also told Plaintiff that he had received the receipts from the certified mail they had sent to him.

41. He also said that he did not receive anything from Plaintiff's doctor.

42. He said he wanted to meet to get "this" figured out and settled.

43. On or about November 8, 2017, Plaintiff received a certified letter from Defendant requesting a medical status update.

44. On December 1, 2017, Plaintiff received another certified letter scheduling a disciplinary hearing on December 11, 2017 which Plaintiff, again, could not attend because of his health condition.

45. Plaintiff sent a doctor's note to Lisa Einsig again regarding his doctor's visit on November 29, 2017.

46. On or about December 21, 2017, Plaintiff received a certified letter from Defendant containing health and vision insurance benefits.

47. The next day and through January 31, 2018, Plaintiff was sick with bronchitis and received medical treatment.

48. On or about January 8, 2018, Plaintiff received a certified letter from Defendant for another disciplinary hearing on January 16, 2018, which Plaintiff did not attend due to his health condition.

49. The hearing was not referred to as a *Loudermill* hearing in the certified letter of January 8, 2018, but it was later referred to as a *Loudermill* hearing after the fact in a letter dated January 25, 2018.

50. Plaintiff completely complied with Defendant's requests and consistently kept it apprised of his medical condition.

51. For example, on January 2, 2018, a doctor's note was sent to Einsig for a doctor's visit on December 20, 2017.

52. On January 10, 2018, a doctor's note was sent to Einsig for a doctor's visit the same day.

53. On January 30, 2018, Plaintiff received a certified letter from Defendant containing the outcome of the disciplinary hearing from January 16, 2018.

54. Plaintiff was docked two weeks or approximately one hundred and hour hours.

55. On or about February 15, 2018, Plaintiff received a certified letter from Defendant ordering him to report to Defendant's headquarters on or about February 20, 2018 for a meeting with the Chief and Einsig.

56. Plaintiff did not attend because of his condition.

57. Plaintiff had outpatient surgery performed by Leader Surgical Associates on the same date to address two issues.

58. Plaintiff's anticipated recovery time was four to six weeks.

59.   On or about February 20, 2018, a doctor's note was sent to Einsig.

60.   On or about March 7, 2018, a doctor's note was sent to Einsig for a visit that took place on March 5, 2018.

61.   On or about March 9, 2018, Plaintiff received a certified letter for a *Loudermill* hearing on March 12, 2018. The letter was unsigned.

62.   On or about March 26, 2018, Plaintiff received a certified letter of termination from Defendant.

## COUNT I
### Rehabilitation Act

63.   All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth as length.

64.   Upon information and belief, Defendant receives federal funding from the United States or accepts funds from the County of York that are provided by the United States.

65.   Plaintiff is an individual with a disability as defined under Section 504 of the Rehabilitation Act of 1973, or had at all times relevant hereto, a disability that substantially limited/limits one or more major life activities, or because Plaintiff had a record of such impairment.

66. The foregoing conduct by Defendant constitutes unlawful discrimination under the Rehabilitation Act against Plaintiff on the basis of a disability or perceived disability.

67. The foregoing conduct by Defendant constitutes unlawful retaliation under the Rehabilitation Act against Plaintiff on engaging in a protected activity in the form of a requested medical leave and reasonable accommodations.

68. As a result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered damages as set forth herein.

## COUNT II
### Americans with Disabilities Act ("ADA")

69. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

70. Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA because he has, or had at all times relevant hereto, a disability that substantially limited/limits one or more major life activities, or because he had a record of such impairment.

71. Plaintiff also is a "qualified individual with a disability" as that term is defined in the ADA because Plaintiff was regarded as and/or perceived by Defendant and its agents as having a physical impairment that substantially limited/limits one or more major life activities.

72. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of disability or perceived disability.

73. The foregoing conduct by Defendant constitutes unlawful retaliation under the ADA against Plaintiff on engaging in a protected activity in the form of a requested medical leave and reasonable accommodations.

74. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

## COUNT III
### FMLA Interference & Retaliation

75. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

76. An "employer" under the FMLA includes any public agency, as defined in section 3(x) of the Fair Labor Standards Act, 29 U.S.C. § 203(x).

77. Section 3(x) of the FLSA defines public agency as the government of the United States; the government of a State or political subdivision of a State; or an agency of the United States, a State, or a political subdivision of a State, or any interstate governmental agency.

78. State is further defined in Section 3(c) of the FLSA to include any State of the United States, the District of Columbia, or any Territory or possession of the United States.

79. It is believed and therefore averred Plaintiff was an "eligible employee" within the meaning of the FMLA because he was:

   a. employed by Defendant for a period of at least twelve (12) months; and

   b. worked at least 1,250 hours in the twelve-month period immediately preceding what the Defendant should have perceived as a request for FMLA leave.

   c. Employed by a "public agency".

80. Plaintiff was entitled to FMLA leave and protections associated thereto.

81. Defendant willfully violated the FMLA by retaliating against him for using FMLA qualified leave.

82. Defendant also interfered with Plaintiff's FMLA rights.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment in his favor and against each Defendant and that it enters an Order as follows:

   a. Each Defendant is to be permanently enjoined from engaging in discrimination against the Plaintiff on any other basis prohibited under applicable law;

   b. Each Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of permitting discrimination and

retaliation in the workplace, and is to be ordered to promulgate an effective policy against such harassment and discrimination and to adhere thereto;

c. Each Defendant is to be prohibited from continuing to maintain its unlawful policy, practice, or custom of discriminating against employees and is to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

d. To the extent available as a remedy as a matter of law, each Defendant is to compensate the Plaintiff, reimburse the Plaintiff, and to make Plaintiff whole for any and all pay and benefits the Plaintiff would have received had it not been for the Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. The Plaintiff should be accorded those benefits illegally withheld from the date the Plaintiff first suffered discrimination at the hands of the Defendant or its agents until the date of verdict;

e. The Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by each Defendant's actions to the extent they are available as a matter of law;

f. The Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish each Defendant for its willful, deliberate, malicious and outrageous conduct and to deter each Defendant or other employers from engaging in such misconduct in the future;

g. The Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

h. The Plaintiff is to be awarded the costs and expenses of this action and attorneys fees as provided by applicable federal and state law;

i. Any verdict in favor of the Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal and/or state law and to reflect the tax consequences thereof;

j. The Plaintiff is to be granted such additional injunctive or other relief as may be requested during the pendency of this action in an effort to ensure each Defendant does not engage – or ceases engaging – in unlawful retaliation against Plaintiff or other witnesses to this action;

k. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

l. Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**KOLMAN ELY, P.C.**

<u>         /s/ W. Charles Sipio</u>
Timothy M. Kolman, Esquire
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138

*Attorneys for Plaintiff*

Dated:          November 7, 2018